UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| WAFAA AMER, and CAROL HOWARD, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> RADIUS GLOBAL SOLUTIONS LLC, <br><br> Defendant. | Case No.: 20-cv-1161 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Wafaa Amer is individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Carol Howard is individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them debts incurred for personal, family, or household purposes.

6. Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301, in that the debts Defendant sought to collect arose from consumer transactions with agreements to defer payment.

7. Defendant Radius Global Solutions LLC ("RGS") is a foreign limited liability company with its principal place of business located at 7831 Glenroy Road Suite 250, Edina, Minnesota 55439.

8. RGS does substantial business in Wisconsin and maintains a registered agent for service of process at C T Corporation System, 301 S. Bedford St., Suite 1, Madison, Wisconsin 53703.

9. RGS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10. RGS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

11. RGS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3)

## FACTS

### *Facts relating to Plaintiff Amer*

12. On or about August 1, 2019, Defendant mailed a debt collection letter to Plaintiff Amer regarding an alleged debt owed to "Creditor: Elan Financial Services." A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

13. Upon information and belief, the alleged debt that Defendant was attempting to collect was incurred by use of a consumer credit card account, used only for personal, family, or household purposes.

2

14. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Amer inserted by computer.

15. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by Defendant to attempt to collect alleged debts.

16. <u>Exhibit A</u> includes the following offers to resolve the debt:

> **Offer I:** Resolve your account for $1,868.52 in three payments of $622.84 starting on 08/22/19. If you need additional time to respond to this offer, please contact us. The payments can be no more than 30 days apart. Upon receipt and clearance of all three payments, we will send you a letter confirming that the above referenced account has been resolved.
>
> **Offer II:** Resolve your account for $2,102.10 in six payments of $350.35 starting on 08/22/19. If you need additional time to respond to this offer, please contact us. The payments can be no more than 30 days apart. Upon receipt and clearance of all six payments, we will send you a letter confirming that the above referenced account has been resolved.

17. <u>Exhibit A</u> further states:

> Should you fail to complete the arrangement proposed under Offer I or Offer II, the offers will be cancelled and any payments made will be applied to the balance due shown above. Please note, we are not obligated to renew these offers. If you would like to take advantage of one of the offers listed above, or if you would prefer to make smaller payments over time, please feel free to call us at 866-472-0419.

18. Upon information and belief, the representation that "should you fail to complete the arrangement proposed under Offer I or Offer II, the offers will be cancelled and any payments made will be applied to the balance due shown above" is confusing and misleading to the unsophisticated consumer.

19. The unsophisticated consumer would understand the representation that the offer will be "cancelled" to mean that the debt collector intended to avoid honoring the settlement anytime the consumer tendered a late payment.

20. Upon information and belief, the consumer would have the option to cure any late payment as a matter of course. *See, e.g., Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007) (explaining that debt collectors frequently renew settlement offers).

3

21. Upon information and belief, neither the debt collector nor the creditor, in fact, cancels a settlement plan with the consumer simply because one of the consumer's payments was received a few days late.

22. Moreover, respecting Offer II, the consumer has the option to cure any late payment as a matter of law.

23. The settlement offer in "Offer II" is payable over six installments, and is thus a "consumer credit transaction" under Wisconsin law. *See,* Wis. Stat. §§ 421.301(10), 421.301(30).

24. Under Wisconsin law, the consumer has a "Right to Cure" any default arising from late payment under a consumer credit transaction before the debt collector or collection agency can accelerate the maturity of that transaction. *See*, Wis. Stat. §§ 425.104, 425.105.

25. The forbearance contemplated in "Offer II" is a "consumer credit transaction."

26. The underlying credit card debt is a standard credit card account. It is a "loan" as defined by Wis. Stat. § 421.301(23) because it was "creation of debt pursuant to a credit card or similar arrangement other than pursuant to a seller credit card."

27. The creditor of the debt is a "lender" as defined by Wis. Stat. § 421.301(22) because it is a merchant regularly engaged in the business of making consumer loans. Wis. Stat. §§ 421.301(22) and 421.301(25).

28. The forbearance contemplated in "Offer II" is forbearance of a debt arising from a loan. Wis. Stat. § 421.301(23).

29. The forbearance contemplated in "Offer II" is forbearance by "lender" of a debt arising from a loan because the creditor is agreeing to forbear the loan. Wis. Stat. § 421.301(23).

30. Further, Defendant is also a "lender" as defined by Wis. Stat. § 421.301(22) because it is a merchant regularly engaged in the business of offering forbearances on behalf of the creditor. Wis. Stat. §§ 421.301(22); 421.301(25).

31. The forbearance contemplated in "Offer II" is a "Consumer Loan" as defined by the WCA because it is a "Loan" that is payable in more than four installments. Wis. Stat. §§ 421.301(12); 421.301(30)(b).

32. The forbearance contemplated in "Offer II" is a "consumer credit transaction" as defined by the WCA because it is a "Consumer Loan," and "Consumer Loans" are expressly included in the definition of "consumer credit transactions." Wis. Stat. § 421.301(10).

33. A consumer who entered into the forbearance contemplated in "Offer II" would have the right to cure any alleged default in complying with the payment plan contemplated by "Offer II" prior to re-acceleration of the debt. Wis. Stat. §§ 425.103, 425.104.

34. The terms of a forbearance agreement like "Offer II" may provide that the consumer tender payments within thirty days, but the failure to explain in "Offer II" that the consumer would have the opportunity to cure any default under the payment plan is confusing and misleading to the unsophisticated consumer.

35. Neither the creditor nor the debt collector could, or would, "cancel" a settlement agreement like the one contemplated in "Offer II" or accelerate the maturity of the "Offer II" transaction until after it gave the consumer the right to "cure" any late payment.

36. Amer was confused by Exhibit A.

37. The unsophisticated consumer would be confused by Exhibit A.

38. Amer had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

### Facts relating to Plaintiff Howard

39. On or about October 19, 2019, Defendant mailed a debt collection letter to Plaintiff Howard regarding an alleged debt owed to "Creditor: CITIBANK, N.A." A copy of this letter is attached to this complaint as Exhibit B.

40. Upon information and belief, the alleged debt that Defendant was attempting to collect was incurred by use of a consumer credit card account, used only for personal, family, or household purposes.

41. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Howard inserted by computer.

42. Upon information and belief, Exhibit B is a form debt collection letter used by Defendant to attempt to collect alleged debts.

43. Exhibit B includes the following language:

> We're sorry that we haven't been able to reach you regarding resolution of your outstanding balance. We have many payment options available on the above referenced account which may better fit your budget. For example, we are able to break up your balance into smaller monthly payments of $300.55. This will allow you to pay down your amount due while keeping open the option of saving money in the future by making a lump sum offer. Please see suggested due dates below. If you need additional time to respond to this offer, please contact us. Coupons are attached for your first three payments and we will send additional coupons if you request them. Upon completion of the payment plan, we will send you a letter confirming that the above referenced account has been resolved.   Make check payable to Citi.

44. By demanding that Howard remit installment payments according to a set schedule in order to "pay down your amount due while keeping open the option of saving money in future," Exhibit B implies that a future settlement offer would only be available to Howard if payments are made according to such a schedule.

45. One meaning of the language: "keeping open the option of saving money in the future," in the context of the paragraph containing it, means that failure to make payments would result in Radius or Citibank refusing to extend a settlement offer for less than the full balance unless the consumer makes payments toward the balance. *Brown v. Card Serv. Ctr.*, 464 F.3d 450,

6

455 (3d Cir. 2006) ("A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate."); *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 687 (7th Cir. 2017) ("Where the FDCPA requires clarity, however, ambiguity itself can prove a violation.); *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 744 (N.D. Ill. 2017) (citing *Brown*).

46. On information and belief, Radius and Citibank would agree to settle the account for a lump-sum amount, less than total balance, at any time. *See, e.g. Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007) ("debt collectors, who naturally are averse to instituting actual collection proceedings for the often very modest sums involved in the consumer debt collection business, frequently renew their offers if the consumer fails to accept the initial offer.")

47. Exhibit B is thus misleading insofar as it implies that a future settlement only be available to the consumer if payments are made for an unknown period of time until Radius or Citibank choose to extend a settlement offer.

48. Plaintiff was confused by Exhibit B.

49. The unsophisticated consumer would be confused by Exhibit B.

50. Plaintiff had to spend time and money investigating Exhibit B and the consequences of any potential responses to Exhibit B.

### ***The FDCPA***

51. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12,

7

2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also, Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

8

52. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

53. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also*

*Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

54. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

55. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

56. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

57. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

### *The WCA*

58. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

59. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

60. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

61. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

62. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

63. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

64. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

65. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell*

*Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

66. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

67. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

68. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69. Exhibit A includes false representations that Defendant cancels the settlement plan upon any late payment by the consumer.

70. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT II – WCA

71. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Exhibit A includes false representations that Defendant cancels the settlement plan upon any late payment by the consumer.

73. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT III – FDCPA

74. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

12

75. <u>Exhibit B</u> is misleading because it contains language that falsely implies that a future settlement only be available to Plaintiff Howard if payments are made prior to an offer being made in the future.

76. In fact, Radius and Citibank would agree to settle the account for an amount less than total balance at any time.

77. Defendant therefore violated 15 U.S.C. §§ 1692e and 1692e(10).

## CLASS ALLEGATIONS

78. Plaintiffs bring this action on behalf of two classes.

79. Class I consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) where the letter was sent between July 28, 2019 and July 28, 2020, inclusive, (e) and was not returned by the postal service.

Plaintiff Amer is the designated representative for Class I.

80. Class II consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit B</u> to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) where the letter was sent between July 28, 2019 and July 28, 2020, inclusive, (e) and was not returned by the postal service.

Plaintiff Howard is the designated representative for Class II.

81. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

82. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant complied with the FDCPA and/or the WCA.

83. Plaintiffs' claims are typical of the claims of their respective class members. All are based on the same factual and legal theories.

84. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

85. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

86. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 28, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com

jfruchter@ademilaw.com  
bslatky@ademilaw.com